UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

THE CHESAPEAKE LIFE INSURANCE COMPANY,

    Plaintiff,

v.                                                           Case No. 18-C-643

GATHEL D. PARKER, *et al.*,

    Defendants.

## ORDER DENYING SUMMARY JUDGMENT

The Chesapeake Life Insurance Company commenced this interpleader action in the United States District Court for the Southern District of Mississippi seeking a judicial determination of the beneficiary of the proceeds from the policy it issued on the life of Daniel Parker. Venue was transferred to this court pursuant to 28 U.S.C. § 1404(a). ECF No. 26. Prior to transferring the case, the district court in Mississippi granted Chesapeake's motion to deposit $19,658.00 into the court's registry and dismissed Chesapeake from the case. ECF Nos. 15, 17, 25. The claimants to the proceeds include Daniels ex-wife Gathel Parker, his sister Connie Skenandore and his daughters Shana Parker and Jessica Parker, all four of whom are representing themselves. Gathel Parker is a citizen of Mississippi, and Connie Skenandore, Shana Parker, and Jessica Parker are all citizens of Wisconsin. This court has jurisdiction over this matter under 28 U.S.C. § 1335. The case is before the court on a motion for summary judgment filed by Shana Parker and Jessica Parker. ECF No. 13. For the reasons set forth below, the motion for summary judgment will be denied.

**BACKGROUND**

The following undisputed facts are taken from the documentary evidence submitted by Chesapeake with the amended complaint and by the remaining parties in their filings regarding the motion for summary judgment. Daniel Parker procured from Chesapeake a $20,000.00 life insurance policy with a December 5, 2008 effective date. ECF No. 9-1 at 8–9. At that time, Daniel[1] designated his wife Gathel Parker as the primary beneficiary and his daughter Jessica Parker as the contingent beneficiary. ECF No. 9-2 at 1. On July 21, 2015, however, Daniel purportedly signed a Beneficiary Change Request form designating his sister Connie Skenandore as the primary beneficiary and her husband Phillip Skenandore as the contingent beneficiary. ECF No. 9-3.

On January 16, 2016, a judgment of divorce terminating the marriage of Daniel and Gathel was entered by the Oneida Nation Family Court. According to the divorce judgment, Daniel appeared in person before the Oneida Family Court, and Gathel appeared by telephone. Under the terms of the divorce, both parties were permitted to change their beneficiaries on their insurance and other documents/instruments. Wisconsin courts grant full faith and credit to judgments of tribal courts under certain circumstances. Wis. Stat. § 806.245. None of the parties challenge the validity of the divorce here.

Daniel died on October 6, 2016, in Green Bay, Wisconsin. ECF No. 9-4. Gathel submitted a claim for benefits on November 14, 2016, but received a letter from Chesapeake on December 13, 2016, explaining that she was not a beneficiary under Daniel's life insurance policy. ECF Nos. 9-5, 9-6. Connie Skenandore submitted her own claim for benefits under the policy on February 9, 2017.

---

[1] Because the decedent and three of the four parties have the same last name, the court will use first names throughout this decision.

2

ECF No. 9-7. According to Chesapeake, it subsequently received numerous calls from both Gathel and Connie concerning their respective claims to the proceeds under the policy. ECF No. 9 ¶ 16.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (quoted source and internal quotation marks omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotation mark omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

This dispute turns on the validity of the July 2015 change of beneficiary form purportedly completed by Daniel. ECF No. 9-3. Connie argues that Daniel properly executed the change form—as witnessed by her son, Galen Metoxen—while living with her in Green Bay in July 2015. ECF No. 22 ¶¶ 1–2. Gathel, Shana, and Jessica Parker, on the other hand, contend that the July 2015 change of beneficiary form was either a forgery or the product of undue influence on Daniel, reflective of Connie's exploitation of her sick brother toward the end of his life. ECF No. 24 ¶¶ 1–2; ECF No. 23 at 2; ECF No. 13 ¶ 3.

At the outset, the court must determine which state's law governs this insurance contract dispute. When an insurance policy does not specifically include a choice-of-law provision, Wisconsin courts apply the "grouping-of-contacts" approach, which provides that "insurance coverage 'is determined by the law of the [jurisdiction] with which the contract has its most significant relationship.'" *Wis. Pharmacal Co., LLC v. Neb. Cultures of Cal., Inc.*, 2016 WI 14, ¶ 14, 367 Wis. 2d 221, 876 N.W.2d 72 (alteration in original) (first quoting *Utica Mut. Ins. Co. v. Klein & Son, Inc.*, 147 Wis. 2d 552, 556, 460 N.W.2d 763 (Ct. App. 1990); then quoting *State Farm Mut. Auto. Ins. Co. v. Gillette*, 2002 WI 31, ¶ 26, 251 Wis. 2d 561, 641 N.W.2d 662). "The 'first rule' in the choice-of-law analysis is 'that the law of the forum should presumptively apply unless it becomes clear that nonforum contacts are of the greater significance.'" *Jafari v. Wynn Las Vegas, LLC*, 569 F.3d 644, 649 (7th Cir. 2009) (quoting *Drinkwater v. Am. Fam. Mut. Ins. Co.*, 2006 WI 56, ¶ 40, 290 Wis. 2d 642, 714 N.W.2d 568 (2006)); *see also ConFold Pac., Inc. v. Polaris Indus., Inc.*, 433 F.3d 952, 957 (7th Cir. 2006).

Although it is not clear from the record where Daniel resided at the time he procured the policy, he resided in Wisconsin at the time of his death. Importantly, he also resided in Wisconsin at the time that he allegedly completed the change of beneficiary form naming Connie as the primary beneficiary. Moreover, Connie, Shana, and Jessica all reside in Wisconsin; only Gathel resides in Mississippi. Accordingly, the court finds that the relevant factors favor the application of Wisconsin law in this dispute.

Under Wisconsin law, "insurance policies are interpreted under the same rules that apply to contract construction," and "[t]he interpretation of an insurance contract is a question of law." *Strauss v. Chubb. Indem. Ins. Co.*, 771 F.3d 1026, 1030 (7th Cir. 2014) (first citing *Marotz v.*

*Hallman*, 2007 WI 89, 302 Wis. 2d 428, 734 N.W.2d 411; then citing *Plastics Eng'g Co. v. Liberty Mut. Ins. Co.*, 2009 WI 13, ¶ 27, 315 Wis. 2d 556, 759 N.W.2d 613). The plain terms of the insurance policy provided: "The Chesapeake Life Insurance Company agrees to pay the death benefit of this policy . . . to the Beneficiary when We receive proper written claim and due proof of the death of the Insured while this policy is in force." ECF No. 9-1 at 6. The policy defined the "Beneficiary" as "[t]he person(s) or entity named in the application to receive the benefits at the Insured's death." *Id.* at 10. Elsewhere, the policy explained that "[y]ou may change the Beneficiary by Written Request unless the Beneficiary has been designated as irrevocable." *Id.* at 13. The original form designating Gathel as the primary beneficiary and Jessica as the contingent beneficiary does not identify the designation as irrevocable. ECF No. 9-2. If valid, the subsequent beneficiary change request form therefore appears to comply with the policy terms in the manner necessary to designate Connie as the primary beneficiary. ECF No. 9-3. Notably, when the designation of a beneficiary is not irrevocable, Wisconsin law does not require the consent of the previously designated beneficiary to make such a change. Wis. Stat. § 632.48(1)(b).

Regardless of the validity of the change of beneficiary form, Gathel's right to the proceeds may have been cut off by the divorce. Under Wisconsin law, a divorce judgment presumptively revokes any revocable beneficiary designation of the former spouse on a life insurance policy. Wis. Stat. § 854.15. An exception exists if the insured had a contrary intent, § 854.15(5)(bm), however, and given the bizarre circumstances of the case, including the evidence that Connie cut Daniel off from his wife and daughters, I am unable to determine whether such evidence exists. Of course, even if Daniel's designation of Gathel was revoked by their divorce, this would have no impact on Jessica as the contingent beneficiary.

As to the validity of the form naming Connie as the new beneficiary, the majority rule is that "when a change of beneficiary has been accomplished by fraud or undue influence practiced by the substituted beneficiary, the rights of the original beneficiary are not cut off by the attempted substitution." 4 STEVEN PLITT, ET AL., COUCH ON INSURANCE § 60:72 (3d ed., updated Dec. 2017) (footnotes omitted). Consistent with that majority rule, the Wisconsin Supreme Court has recognized the availability of equitable relief in cases involving substitution of beneficiaries of life insurance policies. *See Lee v. Preiss*, 18 Wis. 2d. 109, 116–17 118 N.W.2d 104, 108 (1962); *Wilharms v. Wilharms*, 93 Wis. 2d 671, 287 N.W.2d 779 (1980). If, as Gathel, Shana and Jessica contend, Connie forged Daniel's name on the change of beneficiary form, this would constitute fraud. Undue influence, under Wisconsin law, "means conduct by the transferee or another which constitutes such domination over the will as to destroy the transferor's power of independent action." *Wilharms*, 93 Wis. 2d at 680 n.3, 287 N.W.2d at 784 (citing GEORGE C. BOGERT, ET AL., LAW OF TRUSTS § 80 (5th ed. 1973)). The party alleging fraud or undue influence has the burden of proving fraud or undue influence by clear, satisfactory, and convincing evidence. *Williams v. Rank & Son Buick, Inc.*, 44 Wis. 2d 239, 242, 170 N.W.2d 807 (1969); *In re Kamesar's Estate*, 81 Wis. 2d 151, 158, 259 N.W.2d 733 (1977).

From the parties' filings, it is clear that a dispute of material fact exists surrounding the July 2015 change of beneficiary form. Connie asserts that the change of beneficiary form is authentic and "is what [her] brother Daniel wanted." ECF No. 22 at 1. She asserts that after Daniel moved to Green Bay in August 2014 he gave her his financial and medical powers of attorney, and thereafter she gave him regular monthly distributions from his bank account. *Id.* at 2, 16–30. She explains that Daniel told her he wanted her to receive the insurance proceeds because it would help her pay for

6

her house. *Id.* at 3. Gathel, by contrast, asserts that Connie forged the change form and that Daniel did not sign it. ECF No. 23 at 2. She asserts that, at the time Daniel went to Wisconsin—he told her for the purposes of buying a summer home so they would not need to pay for hotels when visiting—there was no discussion of divorce between them. *Id.* But once Daniel was in Wisconsin, Connie dissuaded and prohibited Daniel from speaking with Gathel, going so far as to hide the phone from him by bringing it into her bedroom at night. *Id.*

Jessica and Shana provide a more comprehensive response to Connie. ECF Nos. 13, 24. They acknowledge that the original beneficiary designation contains their father's genuine signature. ECF No. 24 ¶ 1. But they contend that the July 2015 change of beneficiary form is a "blatant forgery" because "the authentic signature of the decedent is nowhere to be found on the document." ECF No. 13 ¶ 3. They further question the validity of the form on the grounds that Galen Metoxen—Connie's son and Daniel's nephew—was not a "disinterested witness" as called for by the form, since his mother stood to benefit from the change. *Id.*; *see also* ECF No. 9-3 at 2. The reply filing by Jessica and Shana also discusses at length Connie's alleged fraudulent conduct, exploitation of Daniel's assets, and neglect of his physical health between his August 2014 arrival in Wisconsin and his death in October 2016. ECF No. 24 at 2–5. Similar to Gathel, Jessica and Shana contend that Connie interfered with their opportunities to visit their father, such as by not leaving Shana alone with him during visits or not waking him up for scheduled lunch plans. *Id.* at 2–3. Essentially, they contend that the forged beneficiary change form was only one aspect of a larger misappropriation of Daniel's assets during the last years of his life.

On this record, the court cannot determine whether the change of beneficiary form is valid or whether it was forged or procured by undue influence over Daniel. These are precisely the kind

of questions that are properly resolved by a trier of fact. Summary judgment must therefore be denied.

## CONCLUSION

For the reasons stated above, Shana and Jessica's motion for summary judgment (ECF No. 13) is **DENIED**. The Clerk is directed to set this matter for a conference to discuss scheduling for trial. The remaining parties, except for Gathel Parker, must appear in person; Gathel may appear by telephone.

**SO ORDERED** this 8th day of June, 2018.

              s/ William C. Griesbach
              William C. Griesbach, Chief Judge
              United States District Court